**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FEDERAL INSURANCE CO.,** | : | |
| **Plaintiff** | : | **Civil Action No. 1:06-CV-991** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DENTSPLY INTERNATIONAL INC.,** | : | |
| **Defendant** | : | |

<u>**MEMORANDUM**</u>

Before the Court is Plaintiff Federal Insurance Co.'s motion for partial summary judgment.  (Doc. No. 51.)  Both parties have submitted briefs in connection with the motion and the motion is ripe for disposition.  For the following reasons, the motion will be denied.

**I.      BACKGROUND[1]**

      **A.      The insurance policies at issue**

From May 1, 1994, to May 1, 1999, Plaintiff Federal Insurance Co. ("Federal") provided excess commercial general liability ("CGL") insurance to Defendant Dentsply International Inc. ("Dentsply").  As discussed in an earlier order, <u>Fed. Ins. Co. v. Dentsply, Inc.</u>, 2007 U.S. Dist. LEXIS 7975, at *3 (M.D. Pa. Feb. 5, 2007), Federal's policies provided Dentsply with "follow form" coverage of $25 million in excess of the primary CGL policies issued by Travelers Indemnity Co. ("Travelers").[2]

The underlying Travelers policies provided that Travelers would "pay those sums that the

---

[1] The following facts are not in dispute for the purposes of summary judgment.

[2] The Seventh Circuit described the difference between a primary and an excess insurance policy as follows: "A policy is primary if the insured has a right to collect the proceeds of the policy in the event of a loss regardless of what other insurance he may have. It is excess if his right is contingent on his having exhausted the limits of his other insurance."  <u>Rhone-Poulenc Inc. v. Int'l Ins. Co.</u>, 71 F.3d 1299, 1301 (7th Cir. 1995).

insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," up to the prescribed limits of liability.  Furthermore, the policies provided that :

> b. This insurance applies to "bodily injury" and "property damage" only if:
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>>
>> (2) The "bodily injury" or "property damage" occurs during the policy period.

(Exs. C-F.)  The policies defined "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Under the primary policies, Travelers agreed to insure Dentsply against damages from "bodily injury" and "property damage" claims up to $ 1 million per "occurrence" and $ 2 million in the aggregate.  Under the excess policies, Federal agreed to "pay on behalf of the insured, that part of loss covered by this insurance in excess of the total applicable limits of underlying insurance [issued by Travelers], provided the injury or offense takes place during the Policy Period of this policy."  (Exs. G-K.)

**B.    The <u>Glover</u> action**

Beginning in 1995, Dentsply marketed and sold a product called "Advanced Cement" for use by dental professionals in permanently affixing patients' crowns, bridges, and other dental work.  Shortly after Dentsply marketed and sold Advanced Cement, patients began to complain that the dental work failed, and dental professionals were required to repair and replace their patients' dental work.  In 2002, a dentist, Bruce Glover D.D.S., filed a class-action lawsuit ("<u>Glover</u> action"), on behalf of himself and other dental professionals in California, in California

2

state court, alleging that Dentsply engaged in unfair business practices and breached express and implied warranties.

### C.      Procedural background

On May 1, 2003, Dentsply tendered a copy of the complaint in the <u>Glover</u> action ("<u>Glover</u> complaint") to Federal and Travelers.  Federal declined to defend or indemnify Dentsply,[3] and Federal thereafter filed this action seeking declaratory relief that it owes no duty to indemnify Dentsply under its insurance policies for the claims asserted in the <u>Glover</u> action.

In this action, Federal advances two separate theories under which it would owe no obligation to indemnify Dentsply.  The first relates to scope of coverage: Federal asserts that its insurance polices do not cover the types of claims raised by the <u>Glover</u> action.  The second relates to the issue of whether any of Federal's policies are "triggered."

In the instant motion for partial summary judgment, Federal seeks adjudication only on the second theory: the "trigger" issue.  Under this theory, Federal argues that, assuming coverage, it owes no duty to indemnify until Dentsply has exhausted every primary-insurance policy triggered by the <u>Glover</u> action.  As discussed below, the Court rejects Federal's multiple-trigger approach.  Accordingly, Federal's motion for partial summary judgment must be denied.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[3] An insurer has a contractual duty to indemnify an insured for damages covered by the policy.  <u>Caplan v. Fellheimer Eichen Braverman & Kaskey</u>, 68 F.3d 828, 831 n.1 (3d Cir. 1995). The "broader" duty to defend typically applies "whenever an underlying complaint may 'potentially' come within the insurance coverage."  <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 746 (3d Cir. 1999) (emphasis added).

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  When deciding a motion for

summary judgment, the Court should "consider all evidence in the light most favorable to the

party opposing the motion." <u>A.W. v. Jersey City Public Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

However, the nonmoving party may not simply sit back and rest on the allegations in the

complaint, but must "go beyond the pleadings and by her own affidavits, or by the depositions,

answers to interrogatories, and admissions on file, designate specific facts showing that there is a

genuine issue for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) (internal quotations

omitted).  Summary judgment should be granted where a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden at trial." <u>Id.</u> at 322.

## III. DISCUSSION

### A. General principles

A liability insurance policy allows an insured to transfer the risk of incurring liability to

an insurer in exchange for premium payment.  One common type of liability insurance policy is a

commercial general liability policy, which serves to insure against liability from fortuitous events

that occur during the course of business.  Although CGL policies vary, typically they provide

coverage for "bodily injury" and "property damage" claims, and occasionally will provide

coverage for "advertising injury" and "personal injury" claims.  Anthony P. Picadio & Bridget M.

Gillespie, <u>Norton on Insurance Coverage in Pennsylvania</u> § 15.E (2006).  In this case, as will be

discussed below, the CGL policies provide coverage for liability caused by "bodily injury" and

"property damage."

CGL policies typically take one of two forms: "claims-made" policies and "occurrence" policies.  A claims-made policy protects an insured for claims made during the policy period, regardless of when the underlying conduct giving rise to the claim took place.  An occurrence policy protects an insured for acts that occur during the policy period, regardless of when a claim is made.  St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 534-35 n.3 (1978); City of Erie v. Guar. Nat'l Ins. Co., 109 F.3d 156, 158-59 (3d Cir. 1997).  In this case, the Travelers CGL policies are occurrence policies.  Thus, the Court's inquiry must focus on whether the underlying circumstances leading to Federal's expected liability "occurred" during the life of any of the Travelers CGL policies.

Here, the Travelers CGL policies provided coverage for liabilities arising from bodily injuries and property damages that: (1) were caused by an "occurrence" that took place in the "coverage territory"; and (2) "occur[ed] during the policy period."  In resolving which policies provided coverage, the Court must endeavor to determine the number of the occurrences, and then determine when an occurrence triggers a policy.

B.       Number of occurrences

Under Pennsylvania law, the number of "occurrences" in a CGL policy is determined by application of the "cause of loss" test.  Liberty Mut. Ins. Co. v. Treesdale Inc., 418 F.3d 330, 335-36 (3d Cir. 2005).  The "cause of loss" test defines the number of occurrences "by the cause or causes of the resulting injury."  D'Auria v. Zurich Ins. Co., 507 A.2d 857, 860 (Pa. 1986) (quoting Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982)).  Thus, if a court finds that there is a single "proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage," then the court must concluded that there is a single

5

"occurrence" for the purposes of coverage.  <u>Appalachian Ins. Co.</u>, 676 F.2d at 61.  <u>See also</u>

<u>Scirex Corp. v. Fed. Ins. Co.</u>, 313 F.3d 841, 852 (3d Cir. 2002) ("[T]he accepted purpose of

defining 'an occurrence or event' is to limit liability, and in the insurance industry 'occurrence' is

commonly understood to mean all loss caused by a single act or related events.").

　　　　If a court can identify a common source of the injuries, and thus a single occurrence, it is

immaterial that multiple individuals were injured as a result.  <u>Treesdale</u>, 418 F.3d at 336 (stating

that "a single occurrence can clearly result in injuries to multiple persons"); <u>accord</u> <u>Champion</u>

<u>Int'l Corp. v. Continental Cas. Co.</u>, 546 F.2d 502, 505 (2d Cir. 1976) (finding a single occurrence

where manufacturer of vinyl-covered paneling became obligated to pay $1.5 million after the

paneling "split apart" on nearly 1400 vehicles manufactured by 26 companies).

　　　　In the present case, the parties do not dispute for purposes of summary judgment that the

injuries in the <u>Glover</u> action each arose from a common source: Dentsply's distribution of

Advance Cement.  Thus, the losses at issue in this case can all be said to have been caused by a

single occurrence.[4]

## C.　　Timing of the occurrence

　　　　Although presently there is no dispute as to the number of occurrences, the issue of the

"timing" is more problematic.  20 ERIC M. HOLMES, APPLEMAN ON INSURANCE 2d § 129.2[K][1]

("One of the most perplexing and difficult CGL issues is determining when an occurrence

occurs.  Timing is the linchpin question in determining whether an event is covered by the CGL

policy.").  Although the number of occurrences is ascertained by the "cause of loss" test, the

---

[4] Federal's brief leaves the door open to revisit the issue of whether there are actually
multiple-occurrences.  (<u>See</u> Pl's Br. in Support 10 & 11-12 n.6.)

timing of an occurrence is not dictated by the "cause of loss." Rather, Pennsylvania courts have adopted an "effect" test to determine the timing of an occurrence. D'Auria, 507 A.2d at 861. As the Third Circuit explained in Appalachian Ins. Co., "the determination of when an occurrence happens must be made by reference to the time when the injurious effects of the occurrence took place." 676 F.2d at 61-62. In many cases, the time of the cause and effect coincide. However, when an injury does not immediately follow the cause giving rise to the injury (as is the case here), courts must determine which policies are "triggered" by the underlying occurrence.

In Pennsylvania, "[t]he general rule is that a tort 'occurs' for insurance coverage purposes when the injuries caused by the tort first become apparent or manifest themselves." Coregis Ins. Co. v. City of Harrisburg, No. 03-920, 2006 WL 860710, at *9 (M.D. Pa. Mar. 30, 2006) (emphasis removed).[5] Applying this rule, the Third Circuit held that, when analyzing the tort of malicious prosecution, the policy triggered is that which is in effect "at the time the underlying

---

[5] This general rule has a limited exception. In J.H. France Refractories v. Allstate Insurance Co., 626 A.2d 502, 507 (1993), the Pennsylvania Supreme Court adopted a "multiple-trigger theory" for asbestosis claims. Under that theory, the Court held that "[r]ather than selecting one or another of the phases as the exclusive trigger of liability, it seems more accurate to regard all stages of the disease process as bodily injury sufficient to trigger the insurers' obligation to indemnify." However, the use of the "triple trigger" approach appears to be limited to asbestos-related claims. See Armotek Indus. v. Employers Ins., 952 F.2d 756, 763 (3d Cir. 1991) (declining to extend a multiple-trigger theory to case involving a toxic-waste spill); City of Erie v. Guaranty Nat'l Ins. Co., 109 F.3d 156, 164 (3d Cir. 1997) (declining to extend a multiple-trigger theory to a case involving a malicious-prosecution claim); Consulting Eng'rs v. Ins. Co. of N. Am., 710 A.2d 82, 87 (Pa. Super. Ct. 1998) ("The 'multiple trigger' theory is applied in latent disease cases, like asbestosis or mesothelioma, because such injuries may not manifest themselves until a considerable time after the initial exposure causing injury occurs. The overriding concern in latent disease cases is that application of the . . . 'first manifestation' rule would allow insurance companies to terminate coverage during the long latency period (of asbestosis); effectively shifting the burden of future claims away from the insurer to the insured (manufacturers of asbestos), even though the exposure causing injury occurred during periods of insurance coverage.").

[criminal] charges are filed," because the injuries "incarceration, humiliation, suspense, physical hardship, and legal expenses – first manifest themselves and become evident to a reasonable plaintiff at the time of arrest and filing of charges." City of Erie, 109 F.3d at 163.  Similarly, in Armotek, which involved a toxic-waste spill, the Third Circuit found that summary judgment was proper for the insurer when "[m]uch, if not all of the injury to the property resulting from the 1977 chromic acid spill must have occurred at the same time of the spill or at some other point prior to 1979, when the first [of the insurer's policies] took effect." 952 F.2d at 763.  Finally, in D'Auria, which involved a claim related to medical malpractice arising out of a failure to diagnose renal failure, the Pennsylvania Supreme Court held that:

> Mr. Egnot's complaint avers that his renal failure in 1979 was the culmination of ongoing renal deterioration which should have been diagnosed in 1963.  While he does not aver that *total* renal failure was apparent in 1963, we nevertheless believe that, according to Egnot's complaint, the injury due to the doctor's negligence was first manifested in a way that could have been ascertained by reasonable diligence well before any of the three policies [at issue] took effect in 1973.  The allegation of ongoing renal deterioration which should have been diagnosed and treated in 1963 seems to us to be a definite injury.

D'Auria, 507 A.2d at 862 (emphasis in original).

In the instant case, the Glover complaint alleges that patients began to complain about failing dental work at some point after 1995.  (Glover Compl. ¶¶ 8, 31.)  The Glover complaint does not, however, allege a readily identifiable time at which the injuries first became apparent.  As such, the Court is unable, at the summary-judgment stage, to determine which of the policies was in effect at the time the injuries first manifested themselves.  Nevertheless, the Court is able to conclude that the CGL policy in effect when the injuries first manifested themselves, and only

that policy, is triggered by the undisputedly single occurrence.  The fact that there are numerous

injuries, and that several of those injuries may have taken place after the time of manifestation, is

immaterial.  <u>Appalachian Ins. Co.</u> 676 F.2d at 61 ("[t]he fact that there were multiple injuries and

that they were of different magnitudes and that injuries extended over a period of time does not

alter our conclusion that there was a single occurrence.").  Accordingly, the Court holds that

determining which policy is triggered by a single occurrence is made by reference to the time at

which the injuries caused by that occurrence first manifested themselves.

### D.      Federal's argument for trigger of multiple policies

Federal argues that the language of the policies at issue compels a contrary result.  It

argues that <u>every</u> policy in effect whenever any "bodily injury" or "property damage" happened is

triggered, regardless of the timing of the "occurrence."  Specifically, Federal argues that:

> Paragraph (b) of the Policies' Insuring Agreement contains two
> distinct conditions to coverage.  First, subparagraph (b)(1) requires
> that damages must arise from "bodily injury" or "property damage"
> that "is caused by an 'occurrence' that takes place in the 'coverage
> territory.'"  There is no requirement in this subparagraph that the
> "occurrence" happen within the policy period, only that it happen
> within the "coverage territory" (which for purposes of this litigation
> is anywhere in the world.)
>
> By contrast, subparagraph [(b)(2)] contains an express temporal
> limitation – the "'bodily injury' or 'property damage' [must] occu[r]
> <u>during the policy period</u>."  (Emphasis added).  Thus, a policy is
> triggered only if the resulting harm happens during a particular policy
> period.

(Pl's Br. in Support 11.)  Under Federal's interpretation, the determination of which policies are

triggered is independent of the number of occurrences.  To Federal, the only relevant question

should be whether some "bodily injury" or "property damage" took place within the policy

period.  This interpretation is flawed for two reasons.

### 1.     The language of the CGL policies

First, a careful inspection of the policies' language does not support Federal's reading.

Subparagraph (b)(1) provides that "[t]he 'bodily injury' or 'property damage' [must be] caused

by an 'occurrence' that takes place in the 'coverage territory.'"  Subparagraph (b)(1) clarifies that

if the "occurrence" (the accident) takes place outside the "coverage territory," the policy is

inapplicable.

Subparagraph (b)(2) provides that "[t]he 'bodily injury' or 'property damage' [must]

occur[] during the policy period."  Subparagraph (b)(2) clarifies that if the injury does not take

place during the policy period, the policy is inapplicable.  So, for example, if some negligent act

transpired on December 31, 2006, but the injury did not appear until January 1, 2007, and the

relevant policy was effective between December 31, 2005, and December 31, 2006, then the

insurer would have no obligation despite the fact that the negligent act leading to the liability

happened within the policy period.  Properly understood, subparagraph (b)(2) means that the

injury must "occur" within the policy period.  It does not, as Federal argues, require the

conclusion that *any* injury triggers *any* policy, which would be tantamount to a multiple-trigger

theory.

Accordingly, the Court finds that the language of the policies merely clarifies that

coverage for "occurrences" is limited by the location of the accident and the time of the injury.

Functionally, Federal's interpretation would require the Court to apply a multiple-trigger theory

to the policies at issue.  The Court finds no basis upon which to depart from the first-

manifestation trigger, long accepted within Third Circuit and Pennsylvania insurance-law

jurisprudence.

## 2.    *The reasonable expectations of the parties*

Second, Federal's interpretation would contravene the reasonable expectations of the parties.  Under prevailing Pennsylvania insurance law, the issue of trigger is chiefly resolved by reference to the first-manifestation rule.  In Appalachian Insurance Co., relying on Bartholomew v. Insurance Co. of North America, 502 F. Supp. 246, 254 (D.R.I. 1980), the Third Circuit found that if there is a single occurrence, then coverage is determined by the policy in place when the effects are first manifest.  676 F.2d at 63 (characterizing Bartholomew as holding that although "injuries to the plaintiff continued throughout a number of different policy periods . . . only the policy in effect when the injuries first manifested themselves had to respond.").  Only in the narrow case of asbestos-related claims has the Pennsylvania Supreme Court employed a multiple-trigger theory.

In principle, the Court appreciates that multiple liability insurance policies may be triggered even in the absence of a multiple-trigger theory.  For example, if Dentsply carried a claims-made policy in 2003 when it tendered the Glover complaint to its insurers, as well as the occurrence policies between 1999 and 2002, it ostensibly would be covered under both the claims-made and occurrence policies.  Cf. City of Erie, 109 F.3d at 159 ("Had the City of Erie purchased an occurrence policy in effect on March 25, 1980, when the charges against DiNicola were filed, the City would be covered.  Likewise, had the City of Erie obtained a "claims made" insurance policy in effect on December 15, 1994, it would be covered.").  But, in the case sub judice, the language of the relevant occurrence policies and the parties' reasonable expectations require the conclusion that, even if the consequences of an occurrence extend across the policy

periods of multiple subsequent policies, the only policy triggered is that which was active when the injuries first manifested themselves.

Thus, Federal's arguments cannot be sustained.  Assuming a single occurrence, the triggered policy is that which was in place when the effects first manifested themselves. Federal's motion for partial summary judgment on the theory that it owes no duty to indemnify Dentsply until Dentsply has exhausted each of the Travelers CGL policies must therefore be denied.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's motion for partial summary judgment will be denied.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FEDERAL INSURANCE CO.,        :
     Plaintiff                 :     **Civil Action No. 1:06-CV-991**
                            :
v.                           :     **(Chief Judge Kane)**
                            :
DENTSPLY INTERNATIONAL INC., :
     Defendant            :

## ORDER

**AND NOW**, on this 19th day of November, 2007, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Plaintiff's motion for partial summary judgment (Doc. No. 51) is **DENIED**.  **IT IS FURTHER ORDERED THAT**, pursuant to Defendant's notice of withdrawal of the motion (Doc. No. 59), Defendant's motion to strike Plaintiff's motion for partial summary judgment (Doc. No. 54) is **DENIED**.


                                       S/ Yvette Kane
                                         Yvette Kane, Chief Judge
                                         United States District Court
                                         Middle District of Pennsylvania